# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

MICHELLE CLIFFORD,

    Plaintiff,

v.

GEICO CASUALTY COMPANY,

    Defendant.

Case No. 2:19-cv-1301-KJD-BNW

**ORDER**

Before the Court is Defendant Geico Casualty Company's Motion to Dismiss, or in the Alternative, to Strike and to Sever/Bifurcate and Stay Claims for Bad Faith (docketed at ECF Nos. 5, 6, and 7). Plaintiff, Michelle Clifford, filed one response to Geico's three motions (docketed at ECF Nos. 10, 12), and Geico replied (ECF No. 13).

Michelle Clifford has sued her own insurer, Geico Casualty Company, for breach of contract, unfair claims practices, bad faith, and declaratory relief. Clifford's claims arise out of injuries she suffered in an accident with a third-party driver in August of 2015. Apparently, Clifford's medical bills and other damages exceeded the adverse driver's coverage, which prompted Clifford to make a claim against her own uninsured/underinsured motorist (UIM) coverage with Geico. Clifford claims she has UIM coverage under two separate Geico policies: her own policy and her mother's policy. Together, Clifford believes the policies stack for $115,000 in total UIM coverage.

Geico moves to dismiss Clifford's bad faith, unfair claims practices, and declaratory relief claims. It does not challenge her breach of contract claim. Geico argues that Clifford failed to allege sufficient facts to support her extracontractual claims and that Clifford's declaratory relief claim is redundant. Geico is correct. The key to insurer bad faith is the reasonableness of the insurer's denial or delay. Clifford's complaint lacks specific allegations of fact to support her

assertion that Geico's delay or denial of her UIM benefits was unreasonable. She also fails to allege any facts that Geico was aware of or recklessly disregarded the fact that its coverage decisions were unreasonable. Thus, Clifford's bad faith and unfair claims practices claims are dismissed. Likewise, Clifford's declaratory relief claim fails because the declaration she seeks will necessarily be subsumed into her breach of contract claim. Accordingly, the Court grants Geico's motion to dismiss and need not reach its alternative motions.

## I. Background

On August 4, 2015, Michelle Clifford was injured in a car accident. Compl. at 2. Clifford reported the accident to Geico, her insurer, that same day and then began medical treatment. Id. Clifford was not at fault in the accident. Id. According to Clifford, her medical bills and other damages exceed $50,000. Id. At some point, Clifford settled with the adverse driver for the limits of his policy, $15,000. That settlement did not cover all of Clifford's damages. So, Clifford submitted claims against two Geico policies that she believes provide her UIM coverage. Clifford first claimed coverage under her individual Geico policy. That policy carries $15,000 in UIM coverage. Id. at 2–3. Nine months later, Clifford claimed coverage under her mother, Holly Clifford's policy, which carried $100,000 in UIM coverage. Id. at 3.

Clifford's two claims sparked a flurry of communications between she and Geico over the next two years. In May of 2017, Geico responded to Clifford's claims and offered her $9,650 above the third-party limits. Id. at 3–4. Clifford rejected the offer as she claimed over $50,000 in medical bills and damages. Id. Three months later, Geico increased its offer to $21,000 above the third-party limits. Id. at 4. Again, Clifford declined, citing the balance of her outstanding medical bills. In January of 2018, Geico increased its valuation to $24,000 above third-party limits. Id. Clifford simultaneously declined that offer and asked Geico to disclose what bills and property damage the insurer was relying upon to evaluate her claim. Id. In response, Geico increased its offer to $60,000 over third-party limits but did not disclose what evidence it based its valuation on. Id. at 5. The parties continued to communicate through October of 2018, and Geico's apparent final offer was $62,000 over third-party limits. Id. at 6. According to Clifford, Geico still has not disclosed what evidence it considered in valuing her claim.

At some point during the parties' back-and-forth, Geico authorized its "special investigations unit" to investigate Clifford's claims. Id. at 7. According to Clifford, the special investigations unit investigates fraud in the claims process. That investigation examined Clifford's pending claim, her medical history, her social media accounts, her finances, and her background. Id.

Despite the parties' sustained communication and Geico's investigation, they did not reach an agreement on the valuation of Clifford's claim. That prompted Clifford to file her first complaint on March 28, 2019, in the Eighth Judicial District Court in Las Vegas. Pet. for Removal, ECF No. 1-B. Clifford amended her complaint three weeks later. ECF No. 1-A. Geico then removed the action to this Court and moves to dismiss.

**II.     Legal Standard**

The Court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter to 'state a claim for relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (citation omitted).

In Iqbal, the Supreme Court clarified a two-step approach district courts are to apply when considering motions to dismiss. First, the Court accepts as true all well-pleaded factual allegations in the complaint. Legal conclusions or mere recitals of the elements of a cause of action, on the other hand, do not receive the assumption of truth. Id. at 678. Second, the Court considers whether the factual allegations in the complaint allege a plausible claim for relief. Id. at 679. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 678. Further,

where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." Id. at 679 (internal quotation marks omitted). Thus, when the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. Twombly, 550 U.S. at 570.

Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

### III. Analysis

Geico now moves to dismiss each of Clifford's extracontractual claims. It also asks the Court to decide as a matter of law that the Cliffords' two Geico policies cannot be stacked. Before the Court reaches the merits of Geico's motion to dismiss, it must first determine whether to evaluate Geico's motion as a motion to dismiss or as a motion for summary judgment. Clifford urges the Court to treat the motion as a motion for summary judgment because Geico produced Clifford's insurance policy in its motion to dismiss. That extrinsic evidence, Clifford argues, necessarily converts the motion into a motion for summary judgment. As a result, Clifford asks the Court for time to discover and produce evidence to show a genuine issue of material fact.

At the motion to dismiss stage, the Court only considers the well-pleaded allegations in the plaintiff's complaint. Twombly, 550 U.S. at 555. Typically, when a party submits evidence outside the pleadings in a motion to dismiss, the Court converts the motion to a motion for summary judgment and imposes Rule 56's standard. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018). There are exceptions to that rule, however. Relevant here is the doctrine of incorporation by reference. Incorporation allows the Court to "treat certain documents as though they are part of the complaint itself." Id. at 1002. By incorporating the extrinsic document into the complaint, the Court avoids converting the motion into a motion for summary judgment. In a contract dispute like this one, incorporation prevents a plaintiff from including in their complaint only the contractual provisions that strengthen their allegations,

while omitting other provisions "that weaken—or doom—their claims." Id. Incorporation by reference is appropriate where a plaintiff extensively refers to the extrinsic document or if the document forms the basis of the plaintiff's claim. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Incorporation of Clifford's insurance policy saves Geico's motion to dismiss from conversion to summary judgment. Clifford's policy forms the basis of her claims. At least two of Clifford's claims—that Geico breached its contract and that her two policies may be stacked—depend entirely upon the terms of her insurance contracts with Geico. The resolution of those claims turns on the language of Geico's policy. The complaint suggests that Clifford understood this when she filed her case. There, Clifford block quoted a portion of her insurance policy that presumably entitles her to UIM coverage. Compl. at 3. Clifford cannot rely on the terms of the policy in her complaint and then cry foul when Geico uses the same policy to rebut her allegations. Therefore, the Court will incorporate Clifford's policy by reference (see Decl., ECF No. 8-1) to avoid converting Geico's motion into a motion for summary judgment.

### A. Clifford Cannot Stack the Policies' UIM Benefits

Geico asks the Court to find as a matter of law that the UIM coverage in Clifford's individual policy cannot be stacked with the UIM coverage in her mother's policy. Mot. to Dismiss 7, ECF No. 5. Clifford does not directly dispute this. Instead, she depends on the Court converting Geico's motion to summary judgment and then denying the motion. The problem with Clifford putting all of her proverbial eggs in the summary judgment basket is that she now provides no opposition to Geico's claim that its policy language prohibits stacking. "Stacking" insurance policies allows an insured to collect under two separate policies for the same loss. Here, the difference between stacking and not stacking is $15,000 in UIM coverage: $15,000 in Clifford's individual policy plus $100,000 in Clifford's mother's policy. However, if stacking is prohibited, Clifford's recovery would be limited to the benefits under one single policy. Mot. to Dismiss at 4 (Clifford's recovery is "limited to the greater of [her] two policies").

Until the late-1970s, Nevada law prohibited anti-stacking provisions in insurance contracts. Bove v. Prudential Ins. Co. of Am., 799 P.2d 1108, 1110 (Nev. 1990). Things changed

in 1979 when the Nevada legislature enacted NRS § 687B.145(1). Section 687B.145(1) allowed an insurer to prohibit stacking if it met three requirements. The anti-stacking provision (1) must be in clear language; (2) must be prominently displayed in the policy; and (3) the insured must not "have purchased separate coverage on the same risk nor paid a premium calculated for full reimbursement under that coverage." NRS § 687B.145(1); Torres v. Farmers Ins. Exch., 793 P.2d 839, 842 (Nev. 1990). The insurer bears the burden of demonstrating each of the three factors. Torres, 793 P.2d at 843.

As with any other contract, the Court looks to the language of the contract to determine the intent of the parties. Davis v. Beling, 278 P.3d 501, 515 (Nev. 2012). If the terms are unambiguous, the Court will enforce the contract as written. Ellison v. C.S.A.A., 797 P.2d 975, 977 (Nev. 1990). Ambiguity, on the other hand, is construed against the drafter. Anvui, LLC v. G.L. Dragon, LLC, 163 P.3d 405, 407 (Nev. 2007). In the anti-stacking context, not only must the language be unambiguous, it must be "*truly comprehensible to the average insured*." Torres, 793 P.2d at 843. The goal is to provide actual notice of the consequences of a valid anti-stacking clause to an average person. Id.

Geico's anti-stacking provision in Clifford's policy was set off in bold, capitalized text. It stated:

**ANTI STACKING**

**IF *YOU* OR ANY OTHER *INSURED* IS IN AN ACCIDENT:**

**(A) IN AN *INSURED AUTO* WE WILL NOT PAY MORE THAN THE LIMIT OF COVERAGE FOR THAT PARTICULAR *INSURED AUTO*.**

**(B) IN A MOTOR VEHICLE OTHER THAN *YOUR INSURED AUTO* OR WHILE AS A PEDESTRIAN, WE WILL NOT PAY MORE THAN THE LIMIT OF COVERAGE WHICH *YOU* HAVE ON ANY ONE OF *YOUR INSURED AUTOS*.**

**THIS LIMIT OF COVERAGE APPLIES REGARDLESS OF THE NUMBER OF POLICIES, *INSUREDS, YOUR INSURED AUTOS*, CLAIMS MADE, OR MOTOR VEHICLE INVOLVED IN THE ACCIDENT. COVERAGES ON OTHER MOTOR VEHICLES INSURED BY US CANNOT BE ADDED OR STACKED ON THE COVERAGE OF *YOUR***

***INSURED AUTO* THAT COVERS THE LOSS.**

Geico Policy 17, ECF No. 8-1. Geico's anti-stacking language satisfies the three requirements of NRS § 687B.145(1). First, the terms are in clear language that an average insured would understand. Specifically, the third paragraph explicitly prohibits stacking multiple policies. Id. The average consumer would understand the phrase "coverages on other motor vehicles insured by us cannot be stacked on the coverage of your insured auto" to mean that coverage indeed cannot be stacked. Although the provision is dense, it does not employ formalistic or legal jargon that would confuse or mislead an insured. Rather, it simply states that stacking policies is not allowed.

Next, the anti-stacking provision is prominently displayed in the policy. An anti-stacking provision need not appear at any particular place in the policy. Rather, the language must have greater prominence than the policy's other provisions. Neumann v. Standard Fire Ins. Co., 699 P.2d 101, 105 (Nev. 1985). The question is whether the anti-stacking provision is prominent compared to the rest of the policy. A brief review of the policy shows that the anti-stacking provision is prominently displayed. In fact, there is no other provision like it. The anti-stacking language is the only language in the entire contract that utilized bold font, all-capital font, and italics for emphasis. Because the entire provision is capitalized and bolded, its size is bigger than all of the surrounding provisions. The effect of the bold and all-capital emphasis is a block of text that calls attention to itself and stands out from the remaining text. At minimum, it forecasts to a prospective insured that it is an important policy provision. Given the provision's prominence in the policy documents, the Court finds that Geico's policy meets the second § 687B.145(1) factor.

Finally, Clifford did not purchase two separate policies to insure the same risk. An anti-stacking provision is unenforceable if the insured paid an undiscounted premium on two separate policies that insured against the same risk. See Schneider v. State Farm Mut. Auto. Ins. Co., No. 2:14-cv-1932-JAD-CWH, 2016 WL 4520907 at *2 (D. Nev. Aug. 29, 2016). Alternatively, an anti-stacking provision is valid if two separate insureds happen to purchase a policy that insures the same vehicle against unique risks. Bove, 799 P.2d at 1111. That is what happened here. Two

different insureds—Michelle Clifford and Holly Clifford—purchased their own policies that happened to cover Michelle Clifford's vehicle. They each paid their own premiums, which protected them against their own unique risks. As a result, Geico's anti-stacking provision is valid and enforceable here, and Clifford's recovery is limited to the greater of the two policies.

### B. Clifford Fails to State a Claim for Bad Faith or Unfair Claims Practices

Next, Geico moves to dismiss Clifford's bad faith and unfair claims practices causes of action. The insurer argues that Clifford has not pleaded sufficient facts to proceed on either claim. The basis for both Clifford's bad faith and unfair practices claim is Geico's delay in tendering the UIM benefits under her policy. Though the analysis for both claims is similar, the Court separates them below.

First is Clifford's bad faith claim. Insurers owe their insureds a fiduciary-like duty. Ainsworth v. Combined Ins. Co., 763 P.2d 673, 676 (Nev. 1988). Although an insurer is not required to place an insured's interests above its own, it must treat insureds fairly. Id. At minimum, the insurer must consider its own interests and its insured's interests equally. Allstate Ins. Co. v. Miller, 212 P.3d 318, 326 (Nev. 2009). Implicit in every insurance contract is the duty of good faith and fair dealing. The law imposes the duty to act in good faith, not the contract. Id. at 324 (Nev. 2009). An insurer breaches that duty—and acts in bad faith—when it denies benefits due under the policy without a reasonable basis for the denial. Id. (citing Am. Excess Ins. Co. v. MGM Grand Hotels, Inc., 729 P.2d 1352, 1354–55 (Nev. 1986)). Thus, the key to a bad faith claim is the reasonableness of the insurer's denial. Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2002).

An insurer is liable for bad faith if it knowingly denies a claim without an adequate basis or if it recklessly disregards the fact that there is no adequate basis to deny benefits. Powers v. United Servs. Auto. Ass'n, 962 P.2d 596, 604 (Nev. 1998), opinion modified on denial of reh'g, 979 P.2d 1286 (Nev. 1999). Thus, there exists both an objective and subjective element to proving tortious bad faith. Flonnes v. Prop. & Cas. Ins. Co. of Hartford, 2:12-cv-1065-APG-CWH, 2013 WL 3109381 (D. Nev. June 17, 2013). Objectively, the insurer's denial of benefits must have been unreasonable. Subjectively, the insurer must have known its denial was

unreasonable or, alternatively, the insurer must have recklessly disregarded that its denial was unreasonable.

Here, Walker has not alleged any facts that Geico unreasonably delayed payment under her policy. Instead, her factual allegations show an insurer in frequent communication with its insured and represents the typical back-and-forth in the claims-negotiation process. According to Clifford, she and Geico communicated regularly between July of 2016 and March of 2019, when Clifford filed suit. Much of that correspondence included Geico offering Clifford settlement amounts based on its internal valuation of her claim. See Compl. at ¶ 17 ($9,650 offer over third-party limits), ¶ 18 ($21,000 offer over third-party limits), ¶ 19 ($24,000 offer over third-party limits), ¶ 21 ($60,000 offer over policy limits), ¶ 27 ($62,000 offer over third-party limits). Clifford denied each offer and argues that because those offers did not exceed $52,000 in damages that Geico exercised bad faith. Id. at ¶ (Geico's offers were "unreasonable . . . and in bad faith . . . considering Clifford provided proof of over $52,000 in medical bills and treatment[,] and the third-party policy limits were only $15,000") (alterations omitted)).

The extent of Clifford's factual allegations are that Geico's offers were unreasonable because they did not cover all of her alleged damages. She also claims that Geico was under a duty to advance payments under the policy before the parties agreed on a value. Clifford's allegations are conclusory, however, and do not show Geico's intent to act in bad faith or knowledge that its delay or denial was unreasonable. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (conclusory allegations are not entitled to the assumption of truth). Conspicuously absent from Clifford's complaint is any allegation that Geico lacked a reasonable basis for disputing or delaying coverage. See Powers v. United Servs. Auto. Ass'n, 962 P.2d 596, 604 (Nev. 1998), opinion modified on denial of reh'g, 979 P.2d 1286 (Nev. 1999). Further weakening Clifford's claim is her admission that Geico eventually offered to pay $62,000 over the $15,000 third-party policy limit—a payment that presumably would have covered her outstanding medical bills. Compl. at ¶ 27.

Yet, Clifford still claims that the offer was unreasonable and constituted bad faith. Once the Court strips away her conclusory allegations, however, Clifford's complaint boils down to a

unreasonable or, alternatively, the insurer must have recklessly disregarded that its denial was unreasonable.

Here, Walker has not alleged any facts that Geico unreasonably delayed payment under her policy. Instead, her factual allegations show an insurer in frequent communication with its insured and represents the typical back-and-forth in the claims-negotiation process. According to Clifford, she and Geico communicated regularly between July of 2016 and March of 2019, when Clifford filed suit. Much of that correspondence included Geico offering Clifford settlement amounts based on its internal valuation of her claim. See Compl. at ¶ 17 ($9,650 offer over third-party limits), ¶ 18 ($21,000 offer over third-party limits), ¶ 19 ($24,000 offer over third-party limits), ¶ 21 ($60,000 offer over policy limits), ¶ 27 ($62,000 offer over third-party limits). Clifford denied each offer and argues that because those offers did not exceed $52,000 in damages that Geico exercised bad faith. Id. at ¶ (Geico's offers were "unreasonable . . . and in bad faith . . . considering Clifford provided proof of over $52,000 in medical bills and treatment[,] and the third-party policy limits were only $15,000") (alterations omitted)).

The extent of Clifford's factual allegations are that Geico's offers were unreasonable because they did not cover all of her alleged damages. She also claims that Geico was under a duty to advance payments under the policy before the parties agreed on a value. Clifford's allegations are conclusory, however, and do not show Geico's intent to act in bad faith or knowledge that its delay or denial was unreasonable. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (conclusory allegations are not entitled to the assumption of truth). Conspicuously absent from Clifford's complaint is any allegation that Geico lacked a reasonable basis for disputing or delaying coverage. See Powers v. United Servs. Auto. Ass'n, 962 P.2d 596, 604 (Nev. 1998), opinion modified on denial of reh'g, 979 P.2d 1286 (Nev. 1999). Further weakening Clifford's claim is her admission that Geico eventually offered to pay $62,000 over the $15,000 third-party policy limit—a payment that presumably would have covered her outstanding medical bills. Compl. at ¶ 27.

Yet, Clifford still claims that the offer was unreasonable and constituted bad faith. Once the Court strips away her conclusory allegations, however, Clifford's complaint boils down to a

unreasonable or, alternatively, the insurer must have recklessly disregarded that its denial was unreasonable.

Here, Walker has not alleged any facts that Geico unreasonably delayed payment under her policy. Instead, her factual allegations show an insurer in frequent communication with its insured and represents the typical back-and-forth in the claims-negotiation process. According to Clifford, she and Geico communicated regularly between July of 2016 and March of 2019, when Clifford filed suit. Much of that correspondence included Geico offering Clifford settlement amounts based on its internal valuation of her claim. See Compl. at ¶ 17 ($9,650 offer over third-party limits), ¶ 18 ($21,000 offer over third-party limits), ¶ 19 ($24,000 offer over third-party limits), ¶ 21 ($60,000 offer over policy limits), ¶ 27 ($62,000 offer over third-party limits). Clifford denied each offer and argues that because those offers did not exceed $52,000 in damages that Geico exercised bad faith. Id. at ¶ (Geico's offers were "unreasonable . . . and in bad faith . . . considering Clifford provided proof of over $52,000 in medical bills and treatment[,] and the third-party policy limits were only $15,000") (alterations omitted)).

The extent of Clifford's factual allegations are that Geico's offers were unreasonable because they did not cover all of her alleged damages. She also claims that Geico was under a duty to advance payments under the policy before the parties agreed on a value. Clifford's allegations are conclusory, however, and do not show Geico's intent to act in bad faith or knowledge that its delay or denial was unreasonable. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (conclusory allegations are not entitled to the assumption of truth). Conspicuously absent from Clifford's complaint is any allegation that Geico lacked a reasonable basis for disputing or delaying coverage. See Powers v. United Servs. Auto. Ass'n, 962 P.2d 596, 604 (Nev. 1998), opinion modified on denial of reh'g, 979 P.2d 1286 (Nev. 1999). Further weakening Clifford's claim is her admission that Geico eventually offered to pay $62,000 over the $15,000 third-party policy limit—a payment that presumably would have covered her outstanding medical bills. Compl. at ¶ 27.

Yet, Clifford still claims that the offer was unreasonable and constituted bad faith. Once the Court strips away her conclusory allegations, however, Clifford's complaint boils down to a

unreasonable or, alternatively, the insurer must have recklessly disregarded that its denial was unreasonable.

Here, Walker has not alleged any facts that Geico unreasonably delayed payment under her policy. Instead, her factual allegations show an insurer in frequent communication with its insured and represents the typical back-and-forth in the claims-negotiation process. According to Clifford, she and Geico communicated regularly between July of 2016 and March of 2019, when Clifford filed suit. Much of that correspondence included Geico offering Clifford settlement amounts based on its internal valuation of her claim. See Compl. at ¶ 17 ($9,650 offer over third-party limits), ¶ 18 ($21,000 offer over third-party limits), ¶ 19 ($24,000 offer over third-party limits), ¶ 21 ($60,000 offer over policy limits), ¶ 27 ($62,000 offer over third-party limits). Clifford denied each offer and argues that because those offers did not exceed $52,000 in damages that Geico exercised bad faith. Id. at ¶ (Geico's offers were "unreasonable . . . and in bad faith . . . considering Clifford provided proof of over $52,000 in medical bills and treatment[,] and the third-party policy limits were only $15,000") (alterations omitted)).

The extent of Clifford's factual allegations are that Geico's offers were unreasonable because they did not cover all of her alleged damages. She also claims that Geico was under a duty to advance payments under the policy before the parties agreed on a value. Clifford's allegations are conclusory, however, and do not show Geico's intent to act in bad faith or knowledge that its delay or denial was unreasonable. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (conclusory allegations are not entitled to the assumption of truth). Conspicuously absent from Clifford's complaint is any allegation that Geico lacked a reasonable basis for disputing or delaying coverage. See Powers v. United Servs. Auto. Ass'n, 962 P.2d 596, 604 (Nev. 1998), opinion modified on denial of reh'g, 979 P.2d 1286 (Nev. 1999). Further weakening Clifford's claim is her admission that Geico eventually offered to pay $62,000 over the $15,000 third-party policy limit—a payment that presumably would have covered her outstanding medical bills. Compl. at ¶ 27.

Yet, Clifford still claims that the offer was unreasonable and constituted bad faith. Once the Court strips away her conclusory allegations, however, Clifford's complaint boils down to a

dispute over the value of her claim. As Geico correctly argues, mere disputes over coverage do not rise to the level of bad faith. An insurer is not liable for bad faith solely because it was wrong about policy coverage. Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fir Ins. Co., 863 F. Supp. 1237, 1242 (D. Nev. 1994). There must be some element of unreasonableness before a denial becomes bad faith. Clifford has not alleged facts to support her claim that Geico acted unreasonably, nor has she alleged that Geico knew it delayed or denied coverage unreasonably. Accordingly, Clifford's bad faith claim is dismissed.

Clifford's unfair claims practices claim fares no better. NRS § 686A.310 prohibits unfair practices in an insurer's claims-settlement process. There are sixteen barred activities that generally protect an insured against uneven bargaining power with its insurer. Clifford does not specify exactly which of § 686A.310's subsections Geico violated. However, Clifford's allegations seem to implicate subsection (e), which imposes liability upon an insurer that "fail[s] to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." NRS § 686A.310(e).

Clifford alleges that Geico reasonably understood what Clifford's coverage limits were and that it failed to promptly investigate and pay her benefits under the policy. Compl. at ¶ 60. However, as this order makes clear, Clifford's coverage limits were not clear to Geico at the time of Clifford's claim. For example, whether Clifford's two policies could be stacked was disputed and unclear. Additionally, Clifford's allegation that Geico has failed to investigate is undercut by her later claims that Geico's special investigations unit opened an investigation into her claim. At bottom, Clifford's unfair claims practices claim fails for much the same reason as her bad faith claim. The complaint lacks non-conclusory allegations that Geico's delay or denial of policy benefits was anything more than typical claims-processing under a disputed valuation. Therefore, the Court dismisses Clifford's unfair claims practice cause of action.

**C. Clifford's Declaratory Relief Claim is Redundant and Unnecessary**

Next, Geico moves to dismiss Clifford's declaratory relief claim because it is redundant given Clifford's other causes of action. Clifford did not respond to Geico's request in its opposition. That alone is grounds to dismiss Clifford's declaratory relief claim. See LR 47-3

(failure to file points or authorities in opposition to a motion is grounds for granting the motion). Regardless of Clifford's seeming acquiescence to dismissal, her claim also fails on the merits. Declaratory relief should be denied where it is redundant or where it will serve no purpose in clarifying the dispute between parties. United States v. State of Wash., 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc).

Here, Clifford's declaratory relief claim serves no purpose. That claim asks the Court to "determine the parties' relative rights under the written [insurance] contract." Compl. at ¶ 77. However, the Court will necessarily determine the parties' rights under the insurance policy when it evaluates her breach of contract claim. Therefore, Clifford's declaratory relief claim is dismissed.

### D. Clifford's Request to Amend Her Complaint

Having decided that Clifford's allegations do not state a claim for relief, the Court pivots to her request for leave to amend. In Clifford's opposition, she asks that the Court allow her to file a second amended complaint within thirty days if it dismisses any of her claims. Geico counters that leave to amend would be futile. The insurer argues that if Clifford had additional facts to support her dismissed claims, she would have pleaded them in her original complaint or in her opposition to dismissal. Def.'s Reply 6, ECF No. To further muddy the waters, Clifford opted not to attach a proposed amended complaint to her filings, making it difficult for the Court to determine whether there exist un-pleaded factual allegations to support her claims.

Clifford acknowledges that Local Rule 15-1 requires a party moving for amendment to attach the proposed amended pleading to its motion to amend. Clifford believes this requirement does not apply to her because she is not the moving party here; Geico is. Pl.'s Resp. 4 n.3, ECF No. 10. Clifford is correct that Geico is the party moving for dismissal, but she is incorrect that she is not a moving party. Clifford leaves the Court no option but to construe this portion of her opposition as a motion for leave to amend. In fact, Clifford herself requests leave to amend as alternative relief to dismissal. Id. Thus, for purposes of LR 15-1, Clifford is the party moving for leave to amend.

The question, then, is whether Clifford's failure to attach a proposed amendment is fatal

to her alternative request to amend. The Court shares Geico's concerns that if Clifford could plead additional facts, she would have already done it. However, Courts should "freely give" leave to amend when amendment would not be futile, and the request is not a result of undue delay or bad faith. Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). It is difficult to tell whether amendment would be futile from this record, but the Court cannot definitively say that there are no facts available to Clifford to salvage some or all of her claims. Therefore, the Court will allow Clifford thirty days to file an amended complaint.[1]

### E. Geico's Alternative Motions are Moot

Geico has alternatively moved to strike certain allegations from Clifford's complaint and to sever or bifurcate and stay Clifford's bad faith claims. Because these motions are pleaded alternatively to Geico's motion to dismiss, which the Court has granted, the Court need not address their arguments. Therefore, the Court denies Geico's remaining motions as moot.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Geico's Partial Motion to Dismiss (ECF No. 5) is **GRANTED**. Clifford's bad faith, unfair claims practices, and declaratory relief claims are dismissed without prejudice.

IT IS FURTHER ORDERED that Clifford may file an amended complaint to remedy the deficiencies in her complaint within thirty days of entry of this order;

IT IS FURTHER ORDERED that Geico's Motion to Strike (ECF No. 6) and Geico's Motion to Sever/Bifurcate and Stay Case (ECF No. 7) that sought alternative relief are **DENIED as moot**.

Dated this the 20th day of December 2019.

_____
Kent J. Dawson
United States District Judge

---

[1] The Court is mindful that Clifford filed her initial complaint in state court under a lower pleading standard. Going forward, the Court expects Clifford to comply with the applicable federal and local rules in each of her filings.